24-3152 Western Missouri, Denali Summit v. Union Electric Company Mr. Efferson, when you're ready. A second with this. Can you hear me okay? I think the lectern goes up and down. Does it? We had to disengage that for the video conference. Sorry about that. But let me know if it's not coming through. Good morning, your honors, counsel. May it please the court. My client, Denali Summit, asked that this court vacate the district court's order granting Ameren's motion for preliminary injunction, which prohibits Denali Summit from, among other things, building commercial docks and boat slips on property it owns in Fee Simple, Lake of the Ozarks. The injunction violates the Federal Energy Regulatory Commission, or FERC's, requirement that before Ameren can enforce its shoreline management plan, as it seeks to do in this case, it must first acquire and compensate Denali Summit for its private property rights. This is a key point in this case, is that Ameren has a remedy here. It just has to pay for it. I'll first address the subject matter jurisdiction issued by the court in its notice last week. There is a Federal issue here. Whether Federal law, namely the regulations and licenses issued by FERC, independently provide Ameren with the necessary private property rights to regulate use of the property at Lake of the Ozarks under its shoreline management plan. Denali Summit has always maintained that in this case, the only property rights available to Ameren are those very limited flooding rights that are set forth in the 1930 easement that was secured by Ameren's predecessor, Union Electric. Why isn't this just about the scope of the easement itself? If it's about the scope of the easement, what does Federal law have to play a role in? Well, I think that Federal law kind of dominates the landscape between the issues between these two parties as a starting point. But more specifically, in contrast to the situation that the Fourth Circuit faced in the Prestle decision that the court cited, there's issues here that transpired that were not present in Prestle. And namely, that is that in this case, Denali Summit from the beginning was concerned with Ameren's seeming refusal to recognize that the easement applied to their authority or had any relevance whatsoever. And that's a construction of the easement that would be under state law. That's right. That's right. And so what Ameren, when it filed its declaratory judgment petition in state court, we filed in state court here, Ameren alleged at paragraph 49 of that petition, that's at appendix page 14, that Ameren consistently operates as if the shoreline management plan approved in 2017 supersedes any previously existing property rights to the lake bed. So Ameren was plugged in when they filed this case that Ameren seemed to think that Federal authority was all they needed, rather than also making sure they had the correct private property rights. And the district court, so after Denali Summit files this petition, Ameren promptly removes to the Western District of Missouri and filed its motion for preliminary injunction. And the district court initially denied Ameren's motion and correctly focusing on the insufficient property rights conveyed to Ameren under that 1930 easement. And it did focus on this state law property issue in terms of the conveyance of rights under an easement. And it said specifically that based on the language of the easement, the court agrees with plaintiff that Ameren has failed to show the easement limited the landowner's rights to build docks or to compel the landowners to remove anything. But after that order, the court received and reviewed additional documents, none of which were related to the 1930 easement, but instead included the FERC approved shoreline management plan. Then in its September 2024 order, the district court's focus turned entirely away from the easement and focused entirely to Federal statutes and regulations. And the court there relied on Federal authority delegated by FERC to find that Ameren already had the private property rights it needed to control the LA Cemetery's property. Well, let me just, I want to ask this before we sort of move on, which is, I was trying to find it in my notes and I can't find it, but either the FERC license or the Army Corps of Engineers, I think it's a permit, talk about the fact that I think there's a line in there that says the scope of the easement, the scope of the property rights will be determined by state law. And so that seems to be, even the Feds think this is a matter of state law. So why shouldn't we believe them here? Well, there is that language. It's not just in one case. FERC says that repeatedly. I think it's that the instrument of conveyance is what determines the scope of rights transferred from private property owners to the FERC licensee. However, our belief was leading up to this litigation, Ameren didn't seem to recognize that. And more importantly, the district court ultimately did not seem to recognize that. And that's the issue here, is that we flagged this issue that is a federal issue. Is there authority under federal law to, you know, for state property rights to be conveyed to Ameren? And then the district court, while initially ruling in our favor, focusing on the length of the easement, secures additional documents. This is in his order. He looks at documents like the shoreline management plan, and he issues his order granting the preliminary injunction. And here's what he says. He says that Ameren could enforce the shoreline management plan, quote, based on its delegated authority from the 2007 FERC license. Now, we absolutely believe that's incorrect, but that's what he said. And the district court provided, in its second order, no substantive analysis of the easement at all. He stated only that it does not appear that the easement negates Ameren's authority under this 2007 license. And our position, as set forth in our briefing, is that this analysis is backwards. Even before we were addressing this as a jurisdictional issue, our point was the district court is looking at the wrong thing here. That the easement must first convey the property rights for Ameren to use to enforce its shoreline management plan. And the district court's passing comment that the easement doesn't negate Ameren's rights under the shoreline management plan, again, has it backwards because an easement providing rights to Ameren is never going to negate Ameren's rights. It's an issue of what property rights it's providing to Ameren. And are they sufficient to allow Ameren to enforce its shoreline management plan over my client's property? And the only finding, the only real analysis the district court ever undertook as to that issue was in the first order, and he said they don't. And so when he's looking, when the district court was looking at the, focusing on the state law issue, or rather the, when Ameren was, when he was focusing on the easement rights, he denied the preliminary injunction. When his focus turned to Federal authority, then that's when he granted the preliminary injunction. And just to follow up a little bit on my previous question, I don't mean to belabor the point, but necessary is one of the elements of the Grable test. It has to be substantial, necessary, not disrupt the balance, and necessary. And so I just wonder if the antecedent question, and I think this is sort of what you were saying a little bit, if the antecedent question here is whether the state law gave those property rights to Ameren, then we may never reach any of the FERC authority things, and therefore it's not necessary to decide this case, because we could decide it purely based on state law. Now, I'm not saying you're making that argument. All I'm saying is what's the response to that? Well, we would say if you would like to review the easement language, which is what the bulk of our briefing addresses, we believe that it absolutely does not provide Ameren the authority for Ameren to trigger all of these state law, or Federal law rights that it has under the Federal energy of regulation. The FERC's statutes. I'm sorry, Your Honor? I'm not sure. Here's how I understood your position, and maybe I don't understand it. I understood your position to be essentially that you start with just basic state law principles. What does an easement do? Well, an easement transfers limited licenses and rights to property, but the fee remains vested in the person who's transferring the easement. Exactly. Whatever that easement is, they can come up with a shoreline management plan that is consistent with the terms of that easement, but they can't go anything beyond that, because if they don't have the possessory interest in the easement, they have no right to establish a plan that goes beyond their easement. That is correct. In fact, FERC's own regulations require Ameren to get those rights. They say you can't rely on our license to get those rights. You have to go out and buy them. You have to acquire them, and only then do we get to determine whether my client's property complies with its shoreline management plan. But it is a federal requirement that Ameren go out and get those rights. But then the determination of whether those, in this case certainly, whether those rights have been secured is simply by looking at the language of the easement and seeing if there is enough rights conveyed to Ameren to allow them to control my client's docks and property and tell them how long the dock could be and where the seawalls can go and things like that. So the antecedent question must be resolved under state law as to what rights and privileges were transferred by the easement, and that's the starting point of any analysis? Well, our position was that certainly the district court erred by not doing just that. We would still suggest that there is a layer of federal law above and below that However, in this case, we don't get to that point because the district court found incorrectly, we would submit, that the first license was the basis of the authority that Ameren needed. And our position is, for instance, if this court were to find there was no subject matter jurisdiction, then we believe that this court should also find and make a determination that the district court issued the injunction and properly relying on the third license is the source of Ameren's private property rights. Why can't we just vacate, if that's true, why can't we just vacate the injunction because the district court didn't have jurisdiction? Why would we need to reach that additional issue? Well, I think if you're going to vacate the injunction because of a lack of jurisdiction, implicit in vacating that injunction would be your disagreement with the district court that the third license provided the state property rights required. Because if counterfactually... I don't get that because if we're vacating for lack of jurisdiction, we're not reaching the merits. We're saying, hey, state court, this should have been in state court, so go file this in state court and the state court can decide what the easement says. Well, I think the issue would be is that unless the district court was wrong in its analysis, there would be federal jurisdiction to determine whether the third license provides this authority. We believe that Ameren was acting as though the third license provided it the property rights it needed. The district court, we believe, in its order found that the property rights were conveyed by a federal license rather than an easement. So under those kind of unique circumstances, I do think there is a federal issue under the gun elements in this case. I have a question for you on this jurisdictional point. The Pressel case, as I read it, involved the enforcement clause of these jurisdictional statutes. Is there an argument here that the district court had jurisdiction under the Federal Power Act because it was an action to enjoin an alleged violation of an order under the act of the FERC order? Wasn't that the theory of the plaintiff that you disagreed with? I believe that was because they did seek to enjoin a violation of an order. I don't recall the Pressel case dealing with an injunction. It did not. That's why I'm asking you the question because that's a separate jurisdictional provision in Section 825P. I'm just wondering whether you feel that this case involved an action to enjoin a violation of a FERC order or not. The way the plaintiffs proceeded. That's an interesting question. Certainly, the jurisdiction that was cited by Amran, and I believe it was cited in our brief, starts with citing the Federal Power Act. Whether an injunction triggers a different layer of possibility for jurisdiction in this beyond what was argued in Pressel, I'm not sure. I haven't considered that, but it seems to me that it certainly would because as I said before, this case is just littered with federal issues except for the interpretation of the easement rights themselves. Let me ask you this then. Setting aside the statute on jurisdiction, if you haven't focused on it, do you think the action here was an effort to enjoin an alleged violation of the FERC order? I understand you think that that can't be correct on the merits. I think that the injunction was that this action is based on a violation of the FERC order. We would look at it as Amran violated the FERC order by not securing first its state property rights, which it was required to do. Now, Amran, I believe, filed this injunction on the basis that we did not comply with our obligations under a FERC order insofar as we didn't comply with the shoreline management plan and things like that, if that answers your question.  Thank you. Thank you. Thank you. If there are no more questions, Your Honor, I'll reserve 10 seconds for rebuttal. Thank you, Mr. Everson. Ms. Miller. May it please the Court. Amanda Miller on behalf of a Pelley Union Electric Company doing business as Amran,  I want to address subject matter jurisdiction and first point out that Denali Summit's own petition filed in the circuit court of Camden County pled that Amran's actions constituted a taking. And in its reply to Amran's counterclaim, it makes clear that the claim, the takings claim that they're pleading arises under the Fifth Amendment to the United States Constitution. So I believe that's a Federal question that Denali Summit has raised. But even if that claim... Does that make a difference if it's not on the face of the complaint? So if you're vague about what the takings claim is, I understand that they've eventually clarified it. Does that make a difference for Federal jurisdiction, which we're supposed to do on the face of a well-pleaded complaint? My understanding is that if the complaint is vague or uncertain, maybe inartfully pled, that the Court can look at what its interpretation is in terms of what the plaintiff is trying to plead. And here we've got some pretty good guidance from the plaintiff itself in terms of what it's actually... What it actually meant to plead in the State Court. But even if that claim had not been pled, Amran's position is that this case falls within the small and special category of cases where cause of action created by Federal law is not expressly invoked by plaintiff's petition. But the Federal question jurisdiction exists because a Federal issue is necessarily raised, actually disputed, substantial, and capable of resolution in Federal court without disrupting Federal-State balance. So what about the question we were posing to opposing counsel early? And I phrased it in terms of the gun, grable, necessary. Is it necessary? So could the court, could any court, trial court, State or Federal, decide this case by saying, you know what, well within the scope of the easement as to what Amran was doing. Case over. No FERC issues. I mean, no Federal issues. I believe the answer in this case is no. And I think that's what distinguishes it from the Prestle case. So in the Prestle case, you had a lakeside property owner who bought the property, wanted to install docks, and had a conversation. You know, submitted an application to Appalachian Power. And they went back and forth. And the property owner did not like the responses that it was getting from Appalachian Power, the demands that it was going to be placed upon it. So without taking action to violate the FERC license or the shoreline management plan, the Prestles brought the action in State court and asked for declaratory judgment about the meaning of APCO's easement. That could have happened here, but it didn't happen here. So early on, there was discussion back and forth between Denali Summit and Amran. There was an application made at one point by Denali Summit for boat docks. Amran eventually said, what you're wanting cannot be permitted under the shoreline management plan, under our license. At that point, Denali Summit could have gone to the Circuit Court of Camden County and said, we need a declaratory judgment. They've got this easement. We disagree about what it means. You know, give us some guidance. It didn't do that. Instead, Mr. Pruitt said, we're putting docks in anyway. And so that's what's different about this case, is that you've got sort of a two-part analysis. You've got to decide the easement question, or the district court has to decide the easement question. But then, either way it goes, there's a federal question lined up behind that. Either Amran doesn't have the easement rights that it has to have in order to exercise its regulatory authority, its regulatory responsibilities. And in that case, we've got Denali Summit alleging a Fifth Amendment taking. So we get into that analysis, and the district court has to decide, I assume, issues of whether Amran can take property under the Fifth Amendment and all that. If Amran's right and its easement gives it all the state law property rights it needs to enforce the shoreline management plan, then we dive into an analysis of whether Denali Summit's installations violate the shoreline management plan. And those are the two things that the district court considered in this case when deciding our motion for injunction. Now, why does that need to be in the second step? If they build something within the scope of your easement, can't you just remove it under state law, under the scope of the easement? Do you necessarily have to resort to the shoreline management plan? And if so, just why? Well, and I've thought about that. I think that Amran's not just a private property owner. It has responsibilities to carry out its shoreline management duties and to allow recreational uses of the shoreline and the lake if they can be permitted under the shoreline management plan. And so I think that if, you know, say Amran, under its easement, has the ability to say, you can't do any of this under the easement, just under the state law property rights. I think that Denali Summit would have an argument that you are acting arbitrarily and unfairly. You have an obligation as FERC's licensee to allow uses if they can be permitted. And I think we would have that fight then about what the license said. I think this, our case is more like Tridam versus Frazier, which is a Ninth Circuit unpublished opinion. But in that case, there was, again, a shoreline property owner. But in that case, they had installed boat docks and various installations without obtaining licenses. Without, I'm sorry, without obtaining permits. And so in that case, like our case, there was an issue about their property rights. But there was also an issue about interpretation of the shoreline management plan. Did their, I mean, I think in that case, the power company pled a nuisance claim. But involved in that were interpretations of the shoreline management plan and the federal license and a determination of whether their installations violated that. And so the Frazier court found that there is, there was federal subject matter jurisdiction in that case. I want to point out, I think I want to point out also that even the easement interpretation question before the district court involved reference to the license. So there was an argument at the district court level. The license has a reference to the 660-foot contour elevation, the crest elevation. Denali Summit argued repeatedly that the 660 was the level up to which Amron was allowed to flood the property. And so we presented evidence to the district court that the 660 actually referred to the crest elevation of Bagnell Dam as reflected in the plans that were approved by FERC back in the late 1920s. So even that, you know, required some reference to outside federal issues. There's been extensive portions of Denali Summit's briefing dedicated to arguing that Union Electric's easement and the grantor's intent must be interpreted in light of Union Electric's FERC licenses and the history of regulation of the shoreline and recreational activities at the Lake of the Ozarks. Another case that's similar to that is Otwell v. Alabama Power Company. It's a 2012 Alabama Northern District Court case. Property owners argued that Alabama Power's 1957 FERC license provided evidence of the parties when they entered into the easement. And the court found that it had subject matter jurisdiction in that case. I believe the federal issues in this case are actually disputed. The easement interpretation, as I pointed out, was only one part of the case. Denali Summit told the district court that it anticipated needing a two-week jury trial in this case, which tells me that they believe there's significant disagreement on some factual issues, which I assume are going to be whether Denali Summit's activities actually violated the shoreline management plan or whether they could be permitted under the shoreline management plan. This appeal does focus primarily on interpretation of the easement, but I think that's because that's where Denali Summit finds the most purchase, in that conclusions of law are reviewed by this court de novo. The federal issues are substantial, and that doesn't focus just on this case in this particular suit, but they're important to the federal system as a whole. This case directly impacts Union Electric's duty under its first FERC license to protect and enhance the scenic, recreational, environmental values of the project. And the Federal Power Act evidences the federal government's strong interest in enacting a complete scheme of national regulation, which will promote the comprehensive development of water resources of the nation. And because Congress intended to have that comprehensive control, we believe the element of appropriate balance of federal and state judicial responsibilities is met. Ameren, in particular, has been asserting against property owners the enforcement obligations placed upon it by its FERC license in federal court for at least 25 years. I do understand that the court's free to examine its subject matter jurisdiction at any time, but I would point to the 2008 case between essentially one of these same parties. Gary Prude is the principal of Denali Summit in this case, and he was the principal of another company against which UE litigated in 2008. Judge Lowery determined that subject matter jurisdiction existed in that case, which is factually very similar. There were large commercial boat docks brought in that were alleged to have violated the shoreline management plan, and that case involved the interpretation of an easement. In that case, it was the property owner's easement, the shoreline property owner's easement, Mr. Pruitt's company. But also, the parties went on to regulate or to litigate whether Ameren had the regulatory authority under the shoreline management plan and the license to require him to remove the large commercial boat docks, as in this case. We have, I will say in response to some of the substantive arguments raised by my opposing counsel, Ameren has never looked to the FERC license as the source of its necessary private property rights to govern development at the Lake of the Ozarks. We have said from the very beginning we understand that we are obligated to have the state law property rights we need in order to exercise our federal regulatory responsibilities. The district court didn't err in determining that we were entitled to an injunction. I think that the district court's language in granting the injunction has been misconstrued somewhat. He did not rely on the license as the source of Ameren's property rights, nor does Ameren. What he said was that nothing in the easement negated Ameren's regulatory authority. In other words, the easement is consistent with Ameren's right to regulate property below the project boundary. He could have expounded on that, but he wasn't required to do that. I think that what the district court was required to do is briefly summarize his reasons for granting the injunction. Ms. Miller? Yes. Could you address irreparable harm and what evidence there is of alleged irreparable harm? In this case, one of the irreparable harms that we're alleging is that a failure to comply, a willful, contumacious failure to comply with Ameren's permitting program is in itself a harm. It's a harm to Ameren. It makes it more difficult for Ameren to enforce its regulatory authority with respect to other property owners. It prevents Ameren from adequately assessing the safety of installations. In this case, we had multiple installations that were being placed throughout the litigation at the district court level until we got the injunction. Our permitting program allows us to assess whether a dock, for example, is safe, whether it constitutes a navigational hazard to boaters and people using the Lake of the Ozarks, whether it constitutes a harm to a neighbor in terms of encroaching on their water space. And when someone's not even complying with the permitting process, that's what constitutes harm to Ameren. Ameren also can face fines from FERC if it doesn't enforce its regulatory responsibilities. So that was the irreparable harm faced in this case. So the fines could be eliminated if you ended up winning, ultimately, couldn't they? Right. Irreparable harm, I understand to mean harm that requires a preliminary injunction before you litigate the rest of the case. I think the concern in this case was that each time Ameren visited this property, more and more commercial boat docks in various stages of construction were present. More seawalls and block walls. Couldn't that be remedied after the end of the case if Ameren prevails? The Denali Summit could be ordered to remove all of that. Yes, in theory that's true. I think that some of the shoreline activities are regulated in order to protect environmental concerns. I don't know that those harms can be remedied after the fact. I don't know if that depends on how long those structures are there. I just didn't see any evidence of environmental damage that happened to date. You're not suggesting there's record evidence of that, okay. No, I'm not suggesting that. I think the primary harm is the willful failure to comply and how it might affect the views of other property owners in terms of what's required down at the lake. Thank you. Thank you. Mr. Epperson, the Court will give you one minute. Thank you, Your Honor. Just a couple of points I'd like to make with the time remaining. Largely, I'd like to address briefly the underlying issue that our briefs were focused on. And that is, I want to note that my client's property was one of the few properties that retained its fee simple rights when the lake of those arcs was being developed. Union Electric acquired 70 percent of the property that it acquired to build that lake it acquired ownership of through purchase or condemnation proceedings. My client's predecessor in interest held on to its fee simple rights. And so I think our point here is that Ameren has not shown, and for the reasons set forth in detail in our briefing, that the 1930 easement takes away enough of those fee simple rights or allow it to undertake the extensive controls and management it's looking to apply to my client's property. The other point that I wanted to make in terms of the district court's initial order, or rather the subsequent order when he granted preliminary injunction. Again, he did talk about the easement negating federal authority. And the only analysis the district court ever undertook with respect to that easement was to find that it did not convey the rights to Ameren that allowed it to enforce it to remove those docks. And it's very clear in that regard. All right. Thank you for your time, Your Honor. Thank you very much, Mr. Jefferson. The case has been well presented. The court will take the matter under advisement. I want to thank you for your time here today. The clerk may call the last case.